IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NEIGHBORS AGAINST BISON SLAUGHTER, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>THE NATIONAL PARK SERVICE, *et al.*,<br><br>Defendants. | CV 19-128-BLG-SPW<br><br>ORDER ON MOTION FOR ATTORNEY FEES |

Plaintiffs Neighbors Against Bison Slaughter and Bonnie Lynn ("Plaintiffs") moved for payment of attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA") following the Court's order granting the Defendants National Park Service, *et al.*'s ("the Government") motion for a voluntary remand without vacatur (Doc. 107). (Doc. 116). The Government opposes Plaintiffs' request, arguing that Plaintiffs are not prevailing parties entitled to fees and costs under the EAJA. (Doc. 121). For the following reasons, the Court agrees with the Government and denies Plaintiffs' motion.

I.  **Statement of Facts**

In 2000, federal, state, and tribal agencies adopted the Interagency Bison Management Plan ("IBMP") to guide the long-term management of Yellowstone

1

bison, including the hunting of bison on public lands in an area known as Beattie Gulch. (Doc. 107 at 2). Pursuant to the IBMP, the agencies issue annual updates and operation plans. (*Id.*). The 2019 operation plan, approved in December 2018, reauthorized hunting in Beattie Gulch. (Doc. 57 at 5).

Plaintiffs own properties in Beattie Gulch. (Doc. 57 at 2). They complain that the hunt is a "chaotic killing field" that endangers Plaintiffs' lives in various ways, from the threat of a stray bullet to the spread of Brucellosis. (Doc. 57 at 4).

Plaintiffs filed this action against the Government in the District of Columbia on October 21, 2019, challenging the Government's authorization of bison hunting in Beattie Gulch. (Doc. 1). In their complaint, Plaintiffs sought declarations by the Court that the Government violated (1) the agencies' respective Organic Acts by approving the hunt; (2) the National Environmental Policy Act ("NEPA") and Administrative Procedure Act ("APA") by failing to analyze the impacts of increased bison hunting; and (3) NEPA and the APA by arbitrarily and capriciously delegating NEPA analyses to non-federal actors. (Doc. 81 at 25).

Plaintiffs also sought a temporary restraining order, preliminary injunction, permanent injunction, and writ of mandamus halting the hunt, as well as a new environmental impact statement ("EIS") on the impacts of the bison hunt in Beattie Gulch. (*Id.*; Doc. 4). The District of Columbia denied the temporary restraining

order, and, after the case was transferred to District of Montana, the Court denied the preliminary injunction. (Doc. 46, 47, 49, 57).

Prior to the parties moving for summary judgment, the Government moved for voluntary remand without vacatur. (Doc. 84). The Government reasoned that since 20 years had passed from the issuance of the IBMP, certain changed circumstances warranted reassessment. (Doc. 84-1 at 19-20). The Government declined to define the scope of its analysis but noted it would consider some of the issues raised by Plaintiffs. (Doc. 84-1 at 18). Plaintiffs supported remand but argued for vacatur because the Government "conceded error" and maintenance of the status quo would continue to endanger local residents. (Doc. 103 at 36-38, 45-46). The Court granted remand without vacatur, finding that the Government's desire "to revisit prior decisions regarding the IBMP and how those decisions have been implemented since 2000" through remand was "substantial and legitimate." (Doc. 107 at 5) ("Order").

Following the Order, Plaintiffs moved for $640,701 in attorney fees and costs pursuant to the EAJA on the grounds that the Order granted the relief Plaintiffs sought. The Government disagreed, arguing that Plaintiffs do not qualify as "prevailing parties" under the EAJA. (Doc. 121 at 10-15).

**II. Discussion**

3

Litigants generally must pay their own attorney fees under the "American rule." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009). However, Congress can create statutory exceptions to the American rule. *Id.* One such statute is the EAJA. 28 U.S.C. § 2412. The EAJA requires the Court to award fees and other expenses in a civil lawsuit against the United States if the plaintiff proves: (1) the plaintiff is eligible under the EAJA, (2) the plaintiff is the prevailing party, and (3) the position of the United States was not substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 408 (2004) (citing 28 U.S.C. § 2412(d)).

Though Plaintiffs are eligible, the Court finds that Plaintiffs are not entitled to fees because Plaintiffs are not prevailing parties and the Government's position was substantially justified.

### A. Eligible Party

An organization is eligible for fees under the EAJA if its net worth does not exceed $7 million and it has 500 or fewer members at the time of filing. 28 U.S.C. § 2412(d)(2)(B). An individual is eligible if her net worth does not exceed $2 million at the time of filing. *Id.*

Here, Plaintiffs assert, and the Government does not dispute, that Neighbors Against Bison Slaughter is an organization of community members with no assets.

4

(Doc. 117 at 15; Doc. 117-8 at 4). Bonnie Lynn is an individual whose net worth is less than $2 million. (Doc. 117 at 15; Doc. 117-9 at 3).

First, Plaintiffs' net worths each fall under the individual and organizational limits. Second, though Plaintiffs do not specify how many people are members of Neighbors Against Bison Slaughter, the characterization of the organization as a small community group and the lack of protest from the Government is satisfactory for the Court to find that Plaintiffs are eligible parties under § 2412(d)(2)(B).

**B.     Prevailing Party**

"Prevailing party" in the EAJA means "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Buckhannon Bd. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (quoting Black's Law Dictionary 1145 (7th ed. 1999)). To be a prevailing party, the proponent must show their case resulted in a judicially sanctioned "material alteration in the legal relationship of the parties." *Id.* at 604-05 (internal quotation marks omitted). The showing of material alteration and judicial sanction are distinct requirements. *Carbonell v. I.N.S.*, 429 F.3d 894, 899 (9th Cir. 2005).

**1. Material Alteration**

A showing of a material alteration in the parties' legal relationship has two components: (1) the relief granted was the relief sought by the would-be prevailing

party, and (2) the relief granted is "actual *relief*, not merely a determination of legal merit." *Klamath*, 589 F.3d at 1030 (emphasis in original).

With respect to the first element, the relief requested does not need to exactly match the relief granted. *Wood v. Burwell*, 837 F.3d 969, 975 (9th Cir. 2016). Rather, the relief granted only needs to "serve[] the goals of the claim." *Id.* (quoting *Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009)). In *Wood*, the court held that this element was met when the plaintiffs sought injunctive and declaratory relief for their APA claim and the district court granted remand based on the agency's arbitrary and capricious review of a Medicaid program. *Id.* at 971, 975 ("By challenging the process by which the Secretary approved the demonstration project, the Wood plaintiffs essentially sought the remedy of a remand.").

As to the second element, a court must "formally indicate that the plaintiff is entitled to actual relief—legal or equitable." *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1031. "A moral victory, in other words, is not enough." *Id. See also Citizens for Better Forestry v. U.S. Dep't of Agric.*, 567 F.3d 1128, 1132 (9th Cir. 2009) (citing *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) ("a plaintiff was not a prevailing party when he 'obtained no relief,' only a 'favorable judicial statement of law'")). The inquiry hinges on whether the defendant is required to do something directly benefitting the plaintiff, *and* whether the plaintiff can legally

6

force the defendant to do that something. *Carbonell*, 429 F.3d at 900 (citing *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1087 (9th Cir. 2003)).

For instance, if a court disposes of a case upon an agency's promise to later undertake certain analyses without including any relief in its disposition, then the parties' legal relationship is not materially altered. *Klamath*, 589 F.3d at 1033. In *Klamath*, the district court dismissed a challenge to a timber sale after the agency rescinded the sale but conditioned the dismissal on the agency's promise to later undertake the analyses it had initially forgone. *Id.* at 1029. On the plaintiffs' request for attorney fees, the court held that the plaintiffs were not prevailing parties because neither the dismissal nor the agency's promise conferred any rights onto the plaintiffs to immediately force the agency to undertake the promised actions if it proceeded with a new sale. 589 F.3d at 1033. Instead, the plaintiffs would have to initiate further proceedings—either by filing a new lawsuit or moving to set aside the judgment—to demonstrate any entitlement to relief. *Id.* at n.5. *Cf. Carbonell*, 429 F.3d at 900 (finding a material alteration because the parties' stipulated stay took away the agency's right to immediately deport plaintiff, which it otherwise had the right to do, and granted the plaintiff the right to enforce the stipulation if the agency sought deportation).

Specifically regarding remand orders, courts have held that remands issued as a result of a finding of legal error materially alter the relationship between the

7

parties. *See Wood*, 837 F.3d at 975. In *Wood*, the court remanded to the agency after finding that the agency had failed to consider important information in approving a Medicaid program in violation of the APA. *Id.* at 972-73. Though the agency ultimately approved the same project after reconsideration, the court held that the remand materially altered the legal relationship between the parties because the remand forced the agency to "undertake a 'do over' of her administrative review" based on a finding of legal error. *Id.* at 974-75.

Here, Plaintiffs argue that the parties' legal relationship was materially altered because Plaintiffs' requested relief would necessarily require remand, and because the Order took away the Government's discretion to issue an EIS. (Doc. 122 at 5). Plaintiffs rely on *Li v. Keisler*, which found a material alteration of the parties' legal relationship when the agency moved for and the court granted voluntary remands of three deportation cases for further agency consideration. 505 F.3d 913, 917-18 (9th Cir. 2007). The Government asserts that Plaintiffs never requested remand and the Order does not redress Plaintiffs' claims. (Doc. 121 at 15).

Plaintiffs succeed on the first element of material alteration. First, like in *Wood*, Plaintiffs sought declaratory and injunctive relief for their APA challenge to the Government's approval of bison hunting, (Doc. 81 at 24-26), and the Court granted a remand, (Doc. 107). "By challenging the process" by which the

8

Government approved the bison hunt, the Plaintiffs "essentially sought the remedy of a remand." *Wood*, 837 F.3d at 975.

The Government argues that Plaintiffs did not request (and in fact "vigorously opposed") remand. (Doc. 121 at 11). The Government misconstrues Plaintiffs' briefing. Plaintiffs supported remand but opposed remand *without vacatur*. (*See* Doc. 103 at 15). As such, the Court finds that Plaintiffs requested the relief the Court granted.

On the second element of material alteration, the Court finds that Plaintiffs fail to show the Order granted them any relief. Plaintiffs are correct that the Order binds the Government to do something that it otherwise would have the discretion not to do, namely produce an EIS. However, Plaintiffs overlook the fact that the Order did not confer any legal rights on Plaintiffs to immediately compel the EIS's production. Instead, to force the Government's hand, Plaintiffs would need to file a new lawsuit or "renew their claim" for unreasonable delay (Doc. 112 at 4). *Klamath*, 589 F.3d at 1033, n.5. Without any enforcement rights embedded in the Order, the remand is a mere "moral victory" for Plaintiffs. *Id.* at 1031.

Furthermore, the Court's remand is not based on a finding of legal error like in *Wood*, contrary to Plaintiffs' assertion that they "obtained relief on every claim,"

(Doc. 117 at 17).[1] Nowhere in the Order does the Court rule on the merits of Plaintiffs' declaratory relief claims. In fact, when the District of Columbia and this Court had opportunities to weigh in on the merits of Plaintiffs' motions for a temporary restraining order, preliminary injunction, and vacatur, both courts refused to find that the merits warranted enjoining the hunt.

The Court is not persuaded by Plaintiffs' application of *Li* for two reasons. First, the petitioners in *Li* received stays on their deportations pending the review on remand, which, according to *Carbonell*, materially altered the relationship between the parties. Order, Li v. Gonzales, No. 04-73258 (9th Cir. Mar. 3, 2005); Order, Mendoza-Aguilera v. Gonzales, No. 04-74457 (9th Cir. Jan. 30, 2006); Order, Janmohamed v. Keisler, No. 06-71068 (9th Cir. Mar. 19, 2007). Here, the Court did not issue a stay, injunction, vacatur, or similar order. Second, *Li* only discusses the first element of material alteration—the relief granted was the relief requested—as if the first element satisfies the entire requirement. *See* 505 F.3d at 917-18. As such, the Court declines to follow *Li* here.

---

[1] The other cases Plaintiffs cite that found that remand orders satisfied the material alteration requirement (Doc. 117 at 16) are distinguishable from the present case because they have the same procedural posture as *Wood*: remand after the court found the agency violated the law. *See Flores v. Shalala*, 49 F.3d 562, 565 (9th Cir. 1995); *Shalala v. Schaefer*, 509 U.S. 292, 294 (1993); United States Court of Appeals for the Ninth Circuit, Attorney Fees and Recoverable Expenses Under the Equal Access to Justice Act ("EAJA") (Mar. 2022) (citing *Rueda-Menicucci v. I.N.S.*, 132 F.3d 493, 495 (9th Cir. 1997)).

Plaintiffs also contend that the Order's requirement that the Government provide status reports on the completion of the EIS materially altered the legal relationship. However, like the agency promises in *Klamath*, the status reports do not provide Plaintiffs with a legal ruling Plaintiffs can use to compel action. At most, the status reports provide Plaintiffs with evidence to support a future unreasonable delay claim under the APA.

For these reasons, the Court finds that the Order did not materially alter the legal relationship between the parties, so Plaintiffs are not entitled to fees under the EAJA.

### 2. Judicial Sanction

The second element of prevailing party status requires that the Court sanctioned any relief granted. *Buckhannon*, 532 U.S. at 605. In analyzing whether the Court sanctioned the relief, the Court looks at the "degree of judicial involvement" in awarding the relief. *Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002). Among the dispositions recognized as judicially sanctioned are judgments on the merits, legally enforceable settlement agreements, and remands based on a finding of legal error. *Citizens for Better Forestry*, 567 F.3d at 1132.

Importantly, the Supreme Court has rejected the so-called "catalyst theory." *Buckhannon*, 532 U.S. at 605. The catalyst theory allowed a plaintiff who did not receive a final judgment on the merits to recover "if his action was a 'catalyst'

11

which motivated the defendant to provide the relief originally sought through litigation." *Labotest*, 297 F.3d at 895-96. Having eliminated the catalyst theory, *Buckhannon* only allows a plaintiff to recover when a defendant's voluntary change in conduct is judicially sanctioned. *Buckhannon*, 532 U.S. at 601. For instance, an agency's voluntary stipulation to change its conduct is judicially sanctioned only if the court incorporates the stipulation's terms into its order. *Carbonell*, 429 F.3d at 901; *Labotest*, 297 F.3d at 895.

Here, Plaintiffs blend their material alteration and judicial sanction arguments, but generally assert that the Court sanctioned the material alteration by taking discretion away from the Government to draft a new EIS. (Doc. 122 at 5). The Government argues that Plaintiffs' contentions essentially invoke the catalyst theory and are therefore unpersuasive. (Doc. 121 at 15).

The Order lacks the necessary judicial sanction primarily because there is no relief to sanction. However, even assuming the Order granted relief, the Court's degree of involvement in the relief is so low as to preclude a finding of judicial sanction. For instance, the Court did not incorporate or ratify any terms of the remand—e.g., the types of information the Government will consider—into its order. The Court also did not find any legal error necessitating remand and in fact rejected merits arguments on Plaintiffs' motion for preliminary injunction and

12

vacatur. The Court's only involvement was its approval of the Government's request for remand as substantial and legitimate.

*Li* is the only case that the parties cited and the Court could find where a voluntary remand had the necessary judicial sanction. However, the Court again declines to rely on *Li*. First, *Li*'s brief discussion of judicial sanction focuses entirely on the circuit mediator's jurisdiction to enter orders on behalf of the agency; it does not explain why the remand orders have the requisite judicial sanction. *Id.* Second, the orders arguably were sanctioned by the stays on deportation, like in *Carbonell*. Again, an analogous order does not exist here.

Plaintiffs' remaining arguments rely on the catalyst theory. (*See* Doc. 117 at 21 (the litigation and the impending summary judgment deadlines "motivated" the Government to seek remand)). Such framing of the Government's actions is expressly prohibited by *Buckhannon* and thus is unpersuasive.

Accordingly, the Court finds that any relief granted to Plaintiffs by the Order was not judicially sanctioned, so Plaintiffs are not entitled to fees under the EAJA.

### 3. Substantial Justification

Lastly, Plaintiffs cannot show the Government lacked substantial justification. Substantial justification requires the Government's litigation position and the underlying agency action to be "justified to a degree that could satisfy a reasonable person." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014) (quoting

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citations omitted)). When analyzing whether an agency was substantially justified in requesting voluntary remand, the Court should consider whether the record demonstrates that the agency's prior action was not consistent with clearly established law. *Li*, 505 F.3d at 918. If the agency seeks remand when its prior action was not consistent with the law, then the agency's position is not substantially justified. *Id.* at 919, 920. However, if the record shows the agency only sought remand to reconsider an otherwise lawful decision, the agency is substantially justified. *Id.* at 920.

Here, the Court neither found nor did the Government admit to a violation of clearly established law that it needed to remedy on remand. Rather, the Government sought only "to revisit prior decisions." (Doc. 107 at 5). Further, contrary to Plaintiffs' argument (Doc. 117 at 23), the absence of any findings of legal error in the five previous cases challenging the IBMP supports the Government's contention that it did not request remand to remedy legal errors. (*See* Doc. 107 at 4-5). So too do the denials of motions for temporary injunction, preliminary injunction, and vacatur in this case. Instead, the previous cases justify the underlying agency action.

Accordingly, the Government was substantially justified in its position, so Plaintiffs are not entitled to attorney fees and costs.

### III. Conclusion

14

The Court finds that Plaintiffs are not entitled to attorney fees and costs under the EAJA. IT IS HEREBY ORDERED Plaintiffs Neighbors Against Bison Slaughter and Bonnie Lynn's Motion for Attorney Fees (Doc. 116) is DENIED.

DATED this 9th day of November, 2022.

*/s/ Susan P. Watters*
SUSAN P. WATTERS
United States District Judge