**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| NEIGHBORS AGAINST BISON SLAUGHTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL PARK SERVICE, et al., <br> Defendants. | **CV-19-128-BMM** <br><br><br> **ORDER ON** <br><br> **MOTION TO REOPEN** |

Plaintiffs Neighbors Against Bison Slaughter and Bonnie Lynn (collectively, "Plaintiffs") move to reopen an administratively closed case. (Doc. 144.) Defendants National Park Service, U.S. Forest Service, Secretary of the Interior, Secretary of the Agriculture, and Superintendent of Yellowstone National Park (collectively, "Federal Defendants") oppose the motion. (Doc. 156.) The Court held a hearing on the motion on February 17, 2026. (Doc. 168.) The Court denies the motion to reopen. (Doc. 144.)

**BACKGROUND**

Plaintiffs filed suit against Federal Defendants in 2019, alleging claims under the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA"). (Doc. 1.) Plaintiffs challenged the Interagency Bison

1

Management Plan ("IBMP"). The IBMP coordinates a "hunt" of wild bison from the Yellowstone National Park herd in the Beattie Gulch area of the Custer-Gallatin National Forest. Federal, State, and Tribal entities adopted the IBMP in 2000. Plaintiffs sought to compel Federal Defendants to complete a supplemental NEPA analysis and environmental impact statement ("EIS") on the impacts of the bison hunt in Beattie Gulch. Plaintiffs claim the hunt adversely impacts the natural environment and wildlife in Beattie Gulch and creates hazardous living conditions for residents.

The Court denied Plaintiffs' motions for a temporary restraining order and preliminary injunction. (Doc. 587.) Federal Defendants moved for voluntary remand. (Doc. 84.) Federal Defendants sought remand to prepare additional NEPA analysis by evaluating alternative approaches to managing the wild bison under the IMBP. (Doc. 84-1 at 18.) Federal Defendants also planned to analyze the indirect impacts of managing the bison herd, including hunting practices occurring outside Yellowstone Park. (*Id*.) The Court remanded Plaintiffs' claims without vacatur to allow Federal Defendants to complete additional NEPA analyses in 2021. (Doc. 107.) Plaintiffs appealed the order. (Doc. 108.) The Ninth Circuit directed the Court to renew Plaintiffs' claims upon Federal Defendants' failure to complete the additional NEPA analyses. *Neighbors v. Nat'l Park Serv.*, 2022 WL 1315302, at *1 (9th Cir. May 3, 2022).

2

The parties filed separate status reports in March 2024. (Docs. 138 & 139.) The parties agreed to close the case once Federal Defendants timely issued a record of decision and a final EIS. (Doc. 138 at 2–3; Doc. 139 at 3.) Plaintiffs stated, "[i]f the Agencies issue a record of decision on [time in July], Plaintiffs would not oppose closing this case then." (Doc. 139 at 3.) Federal Defendants alleged that, upon conferring with Plaintiffs' counsel, Plaintiffs "would not oppose the Court closing the case when the Park Service publishes a Record of Decision." (Doc. 138 at 2.)

Federal Defendants filed a second status report confirming that National Park Service had issued a final EIS and a record of decision. (Docs. 140 & 141.) The IBMP adopted the Alternative 2 plan for implementation in the Yellowstone National Park. Nat'l Park Service, Record of Decision for a Bison Mgmt. Plan at 5 (2024). The Alternative 2 plan mandates that the National Park Service "implement a suite of tools that reflects the best available science to preserve an ecologically sustainable population of wild, migratory bison while continuing to work with partners to address brucellosis transmissions, human safety, property damage, and fulfill tribal trust responsibilities." *Id.*

The Court closed the case and directed the Clerk of Court to enter final judgment on July 29, 2024, citing the parties' previous agreement to close the case once Federal Defendants timely had issued a record of decision. (Doc. 142, citing

Doc. 139 at 3; Doc. 138 at 2–3.) The Court promptly filed an amended order closing the case the same day. (Doc. 143.) The Court's amended order deleted the language directing the Clerk of Court to issue a separate judgment. (*Id.*)

Plaintiffs have moved to reopen the case. (Doc. 144.) Plaintiffs contend that Federal Defendants have failed to comply with the Court's previous remand order by not issuing two separate records of decision and EIS. (*Id.*) Plaintiffs also have moved for partial summary judgment. (Doc. 148.)

## LEGAL STANDARD

A court's decision to reopen a case is discretionary. *Watson v. Montana*, 2006 WL 2850583, at *6 (D. Mont. Oct. 3, 2006) (citing *Zenith Corp. v. Hazeltine Rsrch., Inc.*, 401 U.S. 321, 332–33 (1971)).

## DISCUSSSION

### I.    Whether the July 2024 Order Terminated the Case.

Plaintiffs contend that the July 2024 Orders functioned as an administrative closure. (Doc. 145 at 9.) Plaintiffs cite *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 398 (1st Cir. 1999), and *Sarkar v. Garland*, 39 F.4th 611 (9th Cir. 2022), for support. (Doc. 145 at 9.) *Sarkar* concluded that an administrative closure represents an appropriate method for courts to use "only in limited situations," where "halting the proceedings serves the efficient resolution of the subject case."

4

39 F.4th at 618.  A court may "delay" its "decisionmaking to allow action by a different panel or a different forum that will impact the nature of the case pending before [the court] or the basis for [its] decision." *Id*. (cleaned up).

*Lehman* similarly concluded that courts use administrative closure when "a case, though not dead, is likely to remain moribund for an appreciable period of time." 166 F.3d at 392. *Lehman* provided examples of circumstances where a court may use an administrative closure to "shelve a pending" case. *Id*. Such circumstances would "include—but are not limited to" cases where a court awaits "the completion of arbitration proceedings" or "the lifting of the automatic stay" in bankruptcy proceedings. *Id*. at 392, n.3. *Lehman* further emphasized that re-opening an action would be appropriate where a court finds "that the administrative closing was improvident or if the circumstances that sparked the closing abate." *Id*. at 392.

The Court's July 2024 orders closed the case. The circumstances at the time of the closure fail to demonstrate that the Court awaited the completion or conclusion of other proceedings or activity. *See Lehman*, 166 F.3d at 392; *see also Sarkar*, 39 F.4th at 618. No "delay in decisionmaking" existed at the time of the Court's July 2024 orders as the orders terminated the case based on the agreement between the parties upon Federal Defendants issuing a final record of decision and

EIS. *Sarkar*, 39 F.4th at 618 (cleaned up); (Docs. 142 & 143.). Federal Defendants satisfied the conditions of the agreement when National Park Service timely issued a final record of decision and EIS in July 2024. Nat'l Park Service, Record of Decision for a Bison Mgmt. Plan (2024).

Plaintiffs' status report failed to qualify whether they conditioned their acquiescence to close the case upon both agencies timely issuing separate final records of decision and EIS. (Doc. 139 at 3.) Federal Defendants earlier had filed their status report claiming that Plaintiffs agreed to close the case only upon National Park Service issuing a final record of decision and EIS. (Doc. 138 at 2–3.) Plaintiffs' status report failed to correct that claim regarding NPS. (*See* Doc. 139 at 3.)

Plaintiffs now contend that they awaited a separate final record of decision and EIS from U.S. Forest Service. (Doc. 145 at 17.) Plaintiffs waited over a year to file a motion to reopen the case after the Court had ordered the case closed. (Doc. 144.) Plaintiffs failed to raise this concern promptly with the Court upon its closure orders. *See* Fed. R. Civ. Pro. 60(b) (mandating that parties move for relief from an order within a year of the entry of an order). Even so, the IBMP lists U.S. Forest Service as a cooperating agency for the 2024 EIS. Nat'l Park Service, Record of Decision for a Bison Mgmt. Plan (2024); *see also* U.S. Dep't of Agriculture, Forest

Service, Custer Gallatin Land Management Plan,

https://www.fs.usda.gov/r01/custergallatin/planning/forest-plan/custer-gallatin-land-management-plan-forest-plan-revision (last accessed March 13, 2025).
Plaintiffs likely should have raised their concerns related to the U.S. Forest Service's environmental analyses in the 2022 Custer Gallatin National Forest Plan.

Plaintiffs' argument that the "enter judgment" language deleted from the amended order proves that the Court administratively closed the case similarly remains unconvincing. (Doc. 145 at 17.) The Court's first closure order directed the Clerk of Court to enter judgment. (Doc. 142.) The first closure order failed to identify for whom the Clerk of Court should enter judgment. (*Id*.) The second closure order removed the language directing the Clerk of Court to enter judgment. (Doc. 143.) The Court may glean from this amendment only that the Court fixed a clerical error in the first closure order. The parties otherwise had agreed to close the case under the satisfied conditions of Federal Defendants timely issuing a final record of decision and EIS. (Doc. 138 at 2–3; Doc. 139 at 3.) Courts routinely close a case upon parties' settlement or agreement on the issues of a case without entering judgment in favor of either party. To enter judgment for either party upon an agreement of the parties to close the case would be an unusual procedural move by the Court.

The Court awaited no "action from another forum related to the subject case" when it entered the closure orders. *Sarkar*, 39 F.4th at 618. The Court's remand order required Federal Defendants to consider 'the different bison population ranges, options for managing bison inside the park, . . . [and] actions for dealing with brucellosis in bison" in conducting their NEPA analyses. (Doc. 107, citing Doc. 84-1 at 18.). The Ninth Circuit directed further review in the case if Federal Defendants failed to conduct the EIS or "excessively delayed completion of the new EIS." *Neighbors v. Nat'l Park Serv.*, 2022 WL 1315302, at *1 (9th Cir. May 3, 2022). Federal Defendants have demonstrated that the agencies conducted the assessments required by the remand order. (Doc. 156 at 13–14.)

National Park Service based its decision to adopt the 2024 IBMP on "changed circumstances since the issuance of the IBMP in 2000." Nat'l Park Service, Record of Decision for a Bison Mgmt. Plan at 14 (2024). National Park Service considered the average and range of bison population numbers "over the last decade" and its initial "premises regarding brucellosis transmission" in the 2000 plan. *Id*. National Park Service also timely issued its 2024 record of decision and EIS. Federal Defendants completed the requirements set forth in the Court's remand order. (Doc. 107, citing Doc. 84-1 at 18.) The Court need not reopen the case "to enforce the terms of its remand order." *Defs. of Wildlife v. Kempthorne*,

8

2006 WL 2844232, at *12 (D.D.C. Sept. 29, 2006), on reconsideration in part sub nom, *Defs. of Wildlife v. Salazar*, 842 F. Supp. 2d 181 (D.D.C. 2012).

Plaintiffs argue that federal defendants failed to analyze how an alternative proposal would maximize tribal treaty hunting while reducing the risks of injury, the spread of disease, and the possibility of death from crowded and dangerous hunting conditions in Beattie Gulch. (Doc. 160 at 8.) National Park Service specifically considered these arguments in its issuance of the final record of decision and EIS. Nat'l Park Service, Record of Decision for a Bison Mgmt. Plan, at 14 (2024). The Record of Decision notes that "[i]n making the below decision, the NPS considered all adverse and beneficial effects to park resources resulting from the management of bison as well as those indirect effects outside the park on human health and safety, visitor and resident experience, and wildlife from tribal harvest and public hunting." *Id.*

Federal Defendants met with residents near Beattie Gulch to discuss "shared concerns about the hunt" and "brainstorm[] solutions to increase the safety of hunters and residents." Nat'l Park Service, Yellowstone National Park Bison Mgmt. Plan Final Env't Impact Statement, at 215 (2024). Federal Defendants took actions based on the recommendations from this meeting to "close[] areas near residences and roads to hunting and require[] hunters to place unused parts of

9

carcasses at least 150 yards (137 meters) from roads and homes." *Id*. Federal Defendants also require hunting parties to designate a "lead hunter" with "oversight by law enforcement officers" as a "safe [hunting] practice." *Id*.

Plaintiffs further allege that U.S. Forest Service failed to complete NEPA analysis for three final actions: (1) the 2019 Operation Plan, FS11258 and subsequent plans; (2) its "handshake agreement" between U.S. Forest Service and Montana to not enforce the food storage order, YELL Bison Internal [FEIS] Cooperating Agency Review (May 13, 2024), ECF No. 145-7; and (3) its decision to change the Yellowstone wild bison management since 2000 without analyzing environmental effects, FS4231-32. (Doc. 145 at 24–27.)

Federal Defendants contend that Plaintiffs fail to identify how the IBMP directly mandates and controls the decision-making of National Park Service and U.S. Forest Service. (Doc. 156 at 23.) Federal Defendants point to the fact that National Park Service and U.S. Forest Service now operate under new decisions adopted after Plaintiffs had filed their amended complaint. (*Id*.)

Plaintiffs fail to show a final agency action that would warrant reopening of the case. Plaintiffs bring forth new claims that fail to connect to the 2024 IBMP. The proper vehicle for Plaintiffs' concerns would be filing a new Administrative Procedure Act challenge of the 2024 record of decision and EIS. National Park

Service and U.S. Forest Service now operate under different decision documents than the ones addressed in Plaintiffs' amended complaint. (See Doc. 81.) Plaintiffs raised the issue of res judicata at the hearing. Res judicata likely would not apply where Plaintiffs challenge Federal Defendants' new analyses and decisions.

## II.    Whether Federal Rule of Civil Procedure 60(b) Prohibits the Reopening of the Case.

Federal Defendants ask the Court to deny Plaintiffs' motion to reopen under Federal Rule of Civil Procedure 60(b). (Doc. 156 at 19.) Rule 60(b) authorizes a court to relieve a party from a final order or judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect" if a motion is made within one year following the entry of the order or judgment.

Rule 60(b) would apply in this instance as the Court did not close the case administratively. *See Lehman*, 166 F.3d at 392 (holding that Rule 60(b) does not apply when a court administratively closes a case). Plaintiffs failed to inform the Court of any "mistake, inadvertence, surprise, or excusable neglect" within a year of the closure. Fed. R. Civ. Pro. 60(b). The Court declines to apply Rule 60(b) as it determines that the Court's closure orders plainly closed the case. (Docs. 142 & 143.)

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Reopen (Doc. 144) is **DENIED**. Plaintiffs' Motion for Summary Judgment is **DENIED** as moot. (Doc. 148.)

DATED this 13th day of March, 2026.

Brian Morris, Chief District Judge
United States District Court